IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JET INSURANCE COMPANY, a North Carolina Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL EXPRESS CARRIERS, INC., an Illinois Corporation and SARUNAS BRAZDEIKIS, an individual,<br><br>    Defendants. | Case No.: |

**JET INSURANCE COMPANY'S INDEMNITY COMPLAINT**

Now comes Plaintiff, Jet Insurance Company ("Jet"), by and through its undersigned counsel, for its Indemnity Complaint ("Complaint") against Defendants, National Express Carriers ("National Express") and Sarunas Brazdeikis ("Brazdeikis") (collectively "Defendants"), alleges as follows:

**PARTIES**

1. Jet is an insurance company incorporated in the State of North Carolina with its principal place of business in Charlotte, North Carolina.

2. Upon information and belief, Defendant, National Express, is a transportation services company incorporated in the State of Illinois with its principal place of business in Romeoville, Illinois.

3. Upon information and belief, Defendant, Brazdeikis, an individual, is a citizen of and is residing in the State of Illinois and can be served at 143 The Lane, Hinsdale, Illinois 60521.

1

**JURISDICTION AND VENUE**

4. This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and is between citizens of different states.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the Defendants reside in this district.

**FACTS COMMON TO ALL COUNTS**

6. Jet is in the business of, among other things, providing surety bonds to business entities in connection with transportation and shipping services throughout the United States including, but not limited to, US Equipment Interchange Agreement bonds.

7. Upon information and belief, Brazdeikis is the president of National Express, which is in the business of, among other things, providing transportation services throughout the United States.

I. **THE INDEMNITY AGREEMENT**

8. In exchange for Brazdeikis and National Express (collectively hereinafter referred to as the "Indemnitors") executing an indemnity agreement on or about March 10, 2023 ("Indemnity and Payment Agreement"), Jet extended $100,000.00 of surety credit to the Indemnitors.

9. As one of the conditions for extending surety credit, the Indemnitors executed the Indemnity and Payment Agreement in which the Indemnitors agreed to, among other things, indemnify and save Jet harmless against losses and expenses in which Jet may incur on account of

2

having issued the Bond (as defined in paragraph 11 of this Complaint) on behalf of the Indemnitors.

Specifically, the Indemnity and Payment Agreement provides as follows:

> I, the undersigned, hereby declare that the statements herein are true and correct. I hereby apply to the issuing Surety Company ("SURETY") for the Surety Bond ("bond") as described above. In consideration of the execution, renewal, assumption. Continuation, or reissuance of a bond or bonds for the undersigned, or either of them (collectively. the "Undersigned"), the Undersigned promise and agree, jointly and severally, and as the owner or officer of the bonded entity to fully indemnify and hold SURETY harmless from and against any and all claims, claims adjusting expense, demands or legal expense ("Loss"), which arise by reason of the execution of any bond issued pursuant to this application. I agree to deposit with SURETY, upon demand, the amount of reserve posted against such Loss or potential loss as determined by SURETY in its sole discretion. Surety shall be entitled to recover its reasonable attorneys' fees and costs of collection incurred in the enforcement of this Indemnity Agreement or collection of amounts due hereunder. I understand the bond is a credit relationship and hereby authorize SURETY and/or its authorized agents, to gather such credit, employment, DMV records, and business and personal financial information as considered necessary and appropriate for purposes of evaluating whether and at what premium rate such credit should be granted or continued. By signing, I am providing 'written instructions' to The Bond Exchange ("BX") under the Fair Credit Reporting Act authorizing BX to obtain information from my personal credit profile or other information from Experian. I authorize BX to obtain such information solely to conduct a pre-qualification for credit. This is not an application for credit and will not affect your credit score. Upon approval to issue the bond, I agree to pay advanced premium as quoted for the first year or a fractional part thereof that is fully earned and annually thereafter as billed for suretyship. SURETY shall be under no obligation to execute, renew, or continue any bond, and shall have the absolute right to cancel the bond in accordance with the cancelation provision contained therein, or to procure its release under any law for the release of sureties, and SURETY is hereby released from any damage that may be sustained by reason of such actions. I agree that performance and any form of dispute resolution of this agreement shall take place in the county of SURETY'S office of service. The obligations under this agreement may only be terminated by sending written notice to SURETY with notice taking effect twenty (20) days after receipt, but in no event shall such notice operated to modify, bar, or discharge the obligations contained herein as to bonds executed prior to the effective date of termination. This agreement shall survive any changes in, substitute to or renewal of any bond. A facsimile of this agreement shall be treated as an original for all purposes.

A true and correct redacted copy of the Indemnity and Payment Agreement is attached hereto as **Exhibit 1**.

10. As such, pursuant to the Indemnity and Payment Agreement, the Indemnitors, including Brazdeikis, jointly and severally, agreed to exonerate and indemnify Jet from and against any and all liability, loss, and expense, including, among other things, any and all such liability, loss and expenses relating to any claims. See **Exhibit 1**.

## II. THE BOND, BOND CLAIM, AND BREACH OF INDEMNITY AND PAYMENT AGREEMENT

11. At the request of the Indemnitors, Jet, as surety, and in reliance upon the Indemnity and Payment Agreement, provided surety credit in the form of a US Equipment Interchange Agreement bond no. BX0026564 on behalf of the National Express, as principal, naming the Burlington Northern Santa Fe Railway Company ("BNSF"), as obligee (the "Bond"). A true and correct copy of the Bond is attached hereto as **Exhibit 2**.

12. The penal sum of the Bond is $100,000.00. See **Exhibit 2**.

13. On or about April 29, 2024, Jet received a claim on the Bond from BNSF in the amount of $100,000.00 ("Claim").

14. Jet provided National Express numerous opportunities to either resolve the Claim or provide defenses to the Claim, and protect Jet from potential liability, loss and expenses resulting from the Claim, but the Indemnitors failed to do so.

15. As such, and after investigation of the Claim, Jet resolved the Claim and paid BNSF the amount of $100,000.00, the penal sum of the Bond.

16. On or about July 8, 2024, Jet issued a notice of default to provide the Indemnitors notice of their default under the Indemnity and Payment Agreement for their failure to indemnify and hold Jet harmless for the losses incurred in connection with the Bond as required under the

Indemnity and Payment Agreement. A true and correct copy of Jet's July 8, 2024 correspondence is attached hereto as **Exhibit 3**.

17. The July 8, 2024 correspondence also included, in accordance with the Indemnity and Payment Agreement, a formal demand for reimbursement from the Indemnitors for the Claim payment Jet made to BNSF in the amount of $100,000.00. *See* **Exhibit 3**.

18. The Indemnitors failed and/or refused to respond to Jet's July 8, 2024 correspondence and failed and/or refused to reimburse Jet for its losses in the amount of $100,000.00.

19. Subsequently, Jet retained the law firm of Watt, Tieder, Hoffar & Fitzgerald, L.L.P. to enforce its rights under the Indemnity and Payment Agreement.

20. Thereafter, on August 8, 2024, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., on behalf of Jet, sent a final demand for reimbursement to the Indemnitors in accordance with the Indemnity and Payment Agreement (the "Final Demand"). A true and correct copy of the August 8, 2024 Final Demand is attached hereto as **Exhibit 4**.

21. The Final Demand requested that the Indemnitors, on or before August 19, 2024, reimburse Jet for the Claim payment it made to BNSF in the amount of $100,000.00. *See* **Exhibit 4**.

22. As of September 9, 2024, the Indemnitors have failed and/or refused to reimburse Jet's losses to date in the amount of $100,000.00 in accordance with their obligations under the Indemnity and Payment Agreement.

23. Jet has discharged its obligations under the Bond, has acted in conformity with the Indemnity and Payment Agreement and has satisfied all conditions precedent to recovery in this action.

## COUNT I
## Breach of Contract

24. Jet adopts, realleges, and incorporates by reference its allegations set forth in paragraphs 1 through 23 of its Complaint, as though fully set forth herein this paragraph 24.

25. The Defendants are obligated to indemnify Jet from all losses in connection with the Bond and the costs and expenses incurred by Jet in enforcing the terms of the Indemnity and Payment Agreement. *See* **Exhibit 1**.

26. Pursuant to the Indemnity and Payment Agreement, the Defendants agreed to, jointly and severally, among other things, reimburse Jet all loss, cost, and expense incurred in connection with furnishing the Bond and enforcing the Indemnity and Payment Agreement, including attorneys' fees and costs of collection. *See* **Exhibit 1**.

27. Despite, among other things, Jet's Final Demand, the Defendants have breached the Indemnity and Payment Agreement between the parties by failing and refusing to indemnify and hold Jet harmless from the claim on the Bond.

28. Jet has been damaged by the Defendants' material breach of the Indemnity and Payment Agreement in the initial amount of $100,000.00, which represents the Claim paid by Jet.

29. Jet will continue to incur additional costs in relation to the Defendants' breach in the form of attorneys' fees in enforcing the Indemnity and Payment Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Jet Insurance Company prays this Honorable Court:

(a) Enter Judgment against the Defendants, in the amount of Jet's actual costs and estimated loss to date, plus all costs and expenses, including attorneys' fees, in the amount that Jet has incurred;

(b) Order the Defendants to indemnify and exonerate Jet for all liabilities, losses, and expenses incurred by Jet as a result of Jet having executed the Bond;

    (c)    Order the Defendants to pay Jet's costs, including reasonable attorneys' and consulting fees incurred herein; and

    (d)    Grant such additional relief as this Court deems appropriate.

Dated: September 9, 2024.

                                      Respectfully submitted,

                                      */s/Brian C. Padove*
                                      Brian C. Padove
                                      Kaitlyn M. Linsner
                                      WATT, TIEDER, HOFFAR & FITZGERALD, LLP
                                      10 S. Wacker Dr., Suite 1100
                                      Chicago, IL 60606
                                      Tel: 312-219-6900
                                      bpadove@watttieder.com
                                      klinsner@watttieder.com

                                      Attorneys for Plaintiff
                                      JET INSURANCE COMPANY

20391154.1 104764.00001